IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| MICHAEL W., KIM W., AND G.W.;<br><br>Plaintiffs,<br><br>v.<br><br>UNITED BEHAVIORAL HEALTH, and the WELLS FARGO & COMPANY HEALTH PLAN;<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**<br><br>Case No. 2:18-cv-00818-JNP<br><br>District Judge Jill N. Parrish |

Defendants United Behavioral Health ("UBH") and Wells Fargo & Company Health Plan (collectively "Defendants") move to dismiss the complaint filed by Michael W., Kim W., and G.W. (collectively "Plaintiffs") for failure to state a claim. Plaintiffs' Complaint alleges insurance coverage violations under 29 U.S.C. §1001 *et. seq.*, the Employee Retirement Income Security Act of 1974 ("ERISA"), as enforced through 29 U.S.C. § 1132(a)(1)(B), and the Mental Health Parity and Addiction Equity Act of 2008 ("Parity Act"), codified at 29 U.S.C. § 1185a(a)(3)(A)(ii) and enforced by Plaintiffs through 29 U.S.C. § 1132(a)(3). Having considered the parties' briefs, the facts construed in favor of Plaintiffs as the nonmovants, and reviewing the applicable law, the court grants in part and denies in part the Defendants' Motion to Dismiss.

## I.     BACKGROUND

Plaintiff Michael W., an employee at Wells Fargo & Company, had an insurance policy through a self-funded employee welfare benefits plan (the "Plan"). United Behavioral Health ("UBH"), a division of the United Healthcare Insurance Company, was the third-party claims

administrator for the Plan. The Plan covered Michael W. as the Plan participant and Kim W. and G.W. as eligible beneficiaries.

From an early age, G.W. has been treated for mental health conditions including Attention-deficit/hyperactivity disorder ("ADHD"), depression, anxiety, and emotional instability. He suffered from panic attacks, drug abuse, and would frequently self-harm. In 2015 and 2016, G.W. attempted suicide and received acute inpatient hospitalization. He also participated in outpatient care programs and saw a therapist. But none of these treatments proved effective at improving G.W.'s mental health and substance abuse conditions. In May 2016, G.W. was involved in a hit-and-run car accident after which he had a panic attack and fled the scene. Plaintiffs then admitted G.W. to a therapy program at BlueFire Wilderness Therapy on June 26, 2016. BlueFire Wilderness Therapy ("BlueFire") is a "licensed and accredited outdoor behavioral health program in Idaho" that offers intermediate, sub-acute level of treatment to adolescents with mental health and substance abuse problems such as those experienced by G.W. Compl. at 4 ¶ 7.[1] After completing the program at BlueFire, G.W.'s psychologist, Dr. Jeremy Chiles, "strongly recommended that [G.W.] be placed in a residential treatment center." *Id.* at ¶ 13. On September 16, 2019, Plaintiffs admitted G.W. to Catalyst residential treatment center in Utah, which also provided sub-acute inpatient treatment for G.W.'s condition. G.W. remained in treatment at Catalyst until February 20, 2017.

### A. UBH'S INSURANCE COVERAGE OF G.W.'S TREATMENT

Plaintiffs filed insurance claims with UBH for coverage of G.W.'s treatment at BlueFire and Catalyst. UBH denied payment for all of G.W.'s treatment at BlueFire and for approximately

---

[1] Plaintiffs' Complaint contains a numbering error and duplicates paragraphs 1–8. To clarify citations to these portions of the Plaintiffs' Complaint, the court includes the page number associated with the paragraph number for these duplicated paragraphs.

five months of his residential care at Catalyst. Plaintiffs pursued internal and external appeals, which UBH denied. Plaintiffs allege that UBH's denial of coverage for G.W.'s treatment at BlueFire and Catalyst caused Plaintiffs to incur over $88,000 in medical expenses.

### 1. Denial of Coverage for BlueFire Treatment

On December 23, 2016, UBH sent Plaintiffs a letter denying payment for any of G.W.'s treatment at BlueFire. The reviewer wrote that BlueFire "used wilderness therapy as a primary treatment approach" and UBH found that wilderness therapy was not "considered a proven treatment" and "cannot be authorized for reimbursement." *Id.* at 4 ¶ 6. Plaintiffs appealed on June 16, 2017, asserting that "UBH was in violation of ERISA, MHPAEA [the Parity Act], and the Patient Protection and Affordable Care Act when it denied G.'s treatment." *Id.* at ¶ 9. Plaintiffs argued that the term "wilderness therapy" is an outdated classification implying a non-medical program and that BlueFire is a licensed and accredited facility that provides evidenced-based, intermediate-level treatment for mental health/substance abuse in accordance with industry standards. The appeal included peer-reviewed articles on the efficacy of outdoor behavioral health programs and a letter from G.W.'s clinical psychologist, Dr. Keith Avery. Dr. Avery wrote that "[i]t is my strong opinion that there is absolutely no outpatient program in this area that could address the complex issues that [G.W.] was exhibiting" and opined that the BlueFire program "was the best option for [G.W.'s] medical and psychological condition." *Id.* at ¶ 11. Approximately eight months later, UBH sent Plaintiffs a letter upholding its denial of benefits for G.W.'s treatment at BlueFire. The letter states that Plaintiffs' appeal was denied administratively because it was filed after the 180-day review period.[2]

---

[2] Plaintiffs allege that UBH erroneously calculated the 180-day review timeframe and that Plaintiffs filed five days before the deadline on June 16, 2017. Compl. at ¶ 12 n.1. Defendants do not dispute this contention in their briefing. *See* ECF Nos. 13, 35. For the purposes of this motion to dismiss, Plaintiffs factual allegation that they complied with

### 2. Partial Denial of Coverage for Catalyst Treatment

G.W. began residential treatment at Catalyst on September 16, 2016, and remained there until February 20, 2017. UBH covered G.W.'s initial care for twenty-five days, but on October 19, 2016, UBH sent Plaintiffs a letter denying continued payment for Catalyst services effective October 11, 2016. The letter stated that UBH had found G.W. was "medically stable" and his "behavior is better," and based on UBH's Level of Care Guidelines for coverage of mental health residential treatment, it determined G.W. could "continue to improve with more treatment in a less intense Level of Care." *Id.* at ¶ 15. Plaintiffs appealed on April 17, 2017, arguing that UBH's denial made no specific references to G.W.'s medical records, violated ERISA for not divulging the qualifications of the reviewer, was "superficial and ignored the complexity of [G.W.'s] condition," and contradicted the opinions of G.W.'s medical providers. *Id.* at ¶¶ 16–18. Plaintiffs' appeal included a letter from Kim Jenkins, MSW, CADC, stating that "[o]ngoing treatment in a longer-term residential treatment center was strongly recommended" for G.W.'s diagnoses. *Id.* at ¶ 19. Plaintiffs also stated that G.W. had been diagnosed with traits of Borderline Personality Disorder and that his condition was likely to worsen if he did not receive continued inpatient care at a facility such as Catalyst. *Id.* at ¶¶ 20–21. On May 16, 2017, UBH upheld its denial of coverage for G.W.'s continued treatment at Catalyst and wrote that because G.W. "was not suicidal, homicidal or psychotic[,]" UBH concluded "he could be safely and fully treated as an outpatient." *Id.* at ¶ 22.

Four months later, Plaintiffs requested that UBH's denial of continued coverage at Catalyst be evaluated by an external review agency. Plaintiffs argued that UBH continued to violate ERISA because the UBH reviewer failed to adequately respond to points raised in Plaintiffs' appeal, did

---

the UBH internal appeals deadline will be accepted as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Therefore, in the absence of contrary additional evidence, the court concludes that Plaintiffs complied with their internal appeals exhaustion obligation regarding the treatment provided by BlueFire.

not have the requisite experience working with patients such as G.W., and inappropriately used acute level criteria, such as risk of suicide, to evaluate coverage for sub-acute inpatient care at Catalyst. *Id.* at ¶¶ 23–25. On November 2, 2017, the external review agency upheld UBH's denial of continued coverage. The external reviewer concluded that G.W. "could have been treated safely and effectively at a lower level of care" and treatment at Catalyst beyond twenty-five days "was not supported as medically necessary." *Id.* at ¶ 26.

## B. *WIT* AND *ALEXANDER* CLASS ACTIONS

Defendants' Motion to Dismiss urges the court to compare Plaintiffs' Complaint with the facts and claims in a consolidated ERISA class action brought in the Northern District of California. *See Wit v. United Behavioral Health*, 317 F.R.D. 106, 141 (N.D. Cal. 2016). The *Wit* court certified three classes relevant to Plaintiffs' case on September 19, 2016, three days after G.W. began his program at Catalyst. The *Wit* classes are:

- **Wit Guideline Class**: Any member of a health benefit plan governed by ERISA whose request for coverage of residential treatment services for a mental illness or substance use disorder was denied by UBH, in whole or in part, between May 22, 2011 and June 1, 2017, based upon UBH's Level of Care Guidelines or UBH's Coverage Determination Guidelines. The Wit Guideline Class excludes members of the Wit State Mandate Class, as defined below.
- **The Wit State Mandate Class**: Any member of a fully-insured health benefit plan governed by both ERISA and the state law of Connecticut, Illinois, Rhode Island, or Texas, whose request for coverage of residential treatment services for a substance use disorder was denied by UBH, in whole or in part, within the Class period, based upon UBH's Level of Care Guidelines or UBH's Coverage Determination Guidelines, and not upon the level-of-care criteria mandated by the applicable state law. With respect to plans governed by Texas law, the Wit State Mandate Class includes only denials of requests for coverage of substance use disorder services that were sought or received in Texas. The Class period for the Wit State Mandate Class includes denials governed by Texas law that occurred between May 22, 2011 and June 1, 2017, denials governed by Illinois law that occurred between August 18, 2011 and June 1,

2017, denials governed by Connecticut law that occurred between October 1, 2013 and June 1, 2017, and denials governed by Rhode Island law that occurred between July 10, 2015 and June 1, 2017.

- **The Alexander Guideline Class**: Any member of a health benefit plan governed by ERISA whose request for coverage of outpatient or intensive outpatient services for a mental illness or substance use disorder was denied by UBH, in whole or in part, between December 4, 2011 and June 1, 2017, based upon UBH's Level of Care Guidelines or UBH's Coverage Determination Guidelines. The Alexander Guideline Class excludes any member of a fully insured plan governed by both ERISA and the state law of Connecticut, Illinois, Rhode Island or Texas, whose request for coverage of intensive outpatient treatment or outpatient treatment was related to a substance use disorder, except that the Alexander Guideline Class includes members of plans governed by the state law of Texas who were denied coverage of substance use disorder services sought or provided outside of Texas.

*Wit v. United Behavioral Health*, No. 14-CV-02346-JCS, 2019 WL 1033730, at *4 (N.D. Cal. Mar. 5, 2019). The presiding magistrate judge completed a ten-day bench trial on November 1, 2017, and on March 5, 2019, the court ruled that UBH was liable to the class under ERISA because of its breach of fiduciary duty and its arbitrary and capricious denial of insurance benefits. *See id.* at *51–55.

Plaintiffs Michael W. and Kim W. declare they "did not receive any notice of a potential class action claim arising against UBH relating to G.W.'s treatment at BlueFire and Catalyst in the Summer of 2017." ECF Nos. 30–1 ¶ 6, 30–2 ¶ 6. Moreover, Plaintiffs state that they have no desire to participate in the class action and have remained committed to pursuing their claims on an individual basis. ECF Nos. 30–1 ¶¶ 9–10, 30–2 ¶¶ 9–10.

Michael W., Kim W., and G.W. filed their two-count Complaint on October 19, 2018, seeking recovery of benefits and other equitable relief pursuant to 29 U.S.C. §§ 1132(a)(1)(b), 1132(a)(3). Under Count One, Plaintiffs allege that Defendants breached its fiduciary duties under 29 U.S.C. § 1104 and § 1133 by failing to act solely in the interest of the Plan participants and

beneficiaries when it denied G.W.'s benefits and by failing to provide a full and fair review as required under the Plan and by ERISA. Plaintiffs seek a judgment in the amount of $80,000.00, plus prejudgment interest pursuant to Utah Code Ann. § 15-1-1, and attorney fees and costs incurred under 29 U.S.C. § 1132(g). Under Count Two, Plaintiffs allege that Defendants violated the Parity Act, as enforced through 29 U.S.C. § 1132(a)(3), because Defendants used more stringent processes, strategies, standards, or other factors to limit coverage for mental health or substance use disorder treatment as compared to medical/surgical treatment in the same classification. Plaintiffs seek "appropriate equitable relief" under the statute, including surcharge, estoppel, restitution, disgorgement, injunction, accounting, constructive trust, equitable lien, declaratory relief, unjust enrichment, and specific performance.

## II. LEGAL STANDARD

Defendants move to dismiss Plaintiffs' complaint under FED. R. CIV. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The burden is on the plaintiff to frame a complaint with enough factual matter (taken as true) to suggest that he or she is entitled to relief." *Robbins v. Oklahoma ex rel. Dept. of Human Servs.*, 519 F.3d 1242, 1247 (10th Cir. 2008) (internal quotation marks omitted). The allegations in the complaint must be "more than 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action[.]'" *Id.* (quoting *Twombley*, 550 U.S. at 555). In addition, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 563; *see also Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) ("A plaintiff must nudge his claims across the line from conceivable to plausible in order to survive a motion to dismiss." (alteration and internal quotation marks omitted)).

# III.  ANALYSIS

Defendants contend that Plaintiffs' action should be dismissed for failure to state a claim. First, Defendants assert that Plaintiffs Michael W. and Kim W. lack statutory and constitutional standing to sue. Second, Defendants urge the court to dismiss or stay the Plaintiffs' case because another pending class action lawsuit involving UBH has potential preclusive effects on this lawsuit and the court should abstain under the "first-to-file" doctrine. Third, Defendants argue that Plaintiffs have failed to sufficiently plead the elements of their Parity Act claims.

Plaintiffs respond that Michael W. and Kim W. have statutory standing because they are Plan participants or beneficiaries and have constitutional standing because they incurred expenses for G.W.'s treatment. Next, Plaintiffs argue that the pending class action should not control their case because the two lawsuits are sufficiently distinguishable, they never received notice of the class action, and the court should afford Plaintiffs a late opt-out of the class because of their "excusable neglect." Finally, Plaintiffs argue that they adequately pleaded violations of the Parity Act because they have alleged that UBH uses more stringent coverage criteria for mental health care as compared to medical/surgical care.

The court address each issue below and concludes, based on the applicable law and facts construed in favor of Plaintiffs as the nonmovants, that: 1) Kim W. lacks statutory standing but Michael W. has both constitutional and statutory standing; 2) the *Wit* class action is pending and has no formal preclusive effects, and the circumstances do not merit abstention under the first-to-file doctrine; and 3) Plaintiffs have sufficiently pleaded their Parity Act claims concerning denial of benefits for G.W.'s care at BlueFire and Catalyst, and are entitled to discovery to prove the Defendants' alleged coverage disparity and Parity Act violation.

## A. STANDING TO SUE UNDER ERISA

Defendants argue that, as a threshold matter, Plaintiffs Michael W. and Kim W. do not have standing to sue to enforce benefits allegedly due to G.W. under the Plan. Defendants contend that Plaintiffs Michael W. and Kim W. lack both statutory standing and constitutional standing. The court agrees that Kim W. does not have statutory standing to sue because Plaintiffs have failed to plead her status under the insurance plan. However, the court is unpersuaded by Defendants' argument that Michael W. lacks standing because it finds that Michael W. has statutory standing as the Plan participant and has suffered the requisite cognizable injury-in-fact required for constitutional standing.

First, the court addresses Plaintiffs' statutory standing to sue under ERISA. Only a "participant or beneficiary" may bring a civil action "to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1). The burden of proof is on the plaintiff to establish that he or she is a participant or beneficiary. *See Mitchell v. Mobil Oil Corp.*, 896 F.2d 463, 474 (10th Cir. 1990). ERISA defines "participant" as

> any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit.

29 U.S.C. § 1002(7). ERISA defines a beneficiary to mean "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." *Id.* at § 1002(8).

On a Rule 12(b)(6) motion to dismiss for lack of standing, Plaintiffs must state facts sufficient to prove their right to sue on the face of the complaint and the attachments thereto. *See Ward v. Utah*, 321 F.3d 1263, 1266 (10th Cir. 2003) ("For purposes of ruling on a motion to dismiss

for want of standing, both the trial and reviewing courts must accept as true all material allegations *of the complaint*, and must construe *the complaint* in favor of the complaining party." (emphasis added)); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) ("[C]ourts must consider the complaint in its entirety, as well as . . . documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."). Plaintiffs assert in their complaint that "Michael was a participant in the Plan and G. was a beneficiary in the Plan at all relevant times." Compl. at ¶ 3. But the complaint does not speak to Kim W.'s legal status under the Plan. Plaintiffs' opposition to Defendants' Motion states that "Michael and Kim were plan participants or beneficiaries," but Plaintiffs fail to cite to any allegation relating to Kim W.'s status under the Plan. *See* ECF No. 30 at 23.[3] Because Plaintiffs have not pleaded any facts supporting Kim W.'s status under the Plan, they have not demonstrated her statutory standing to sue pursuant to ERISA. *See David S. v. United Healthcare Ins. Co.*, No. 2:18-CV-803, 2019 WL 4393341, at *5 (D. Utah Sept. 13, 2019) (dismissing a plaintiff because "[p]laintiffs do not allege [that she] is a participant, beneficiary, or fiduciary."); *Anne M. v. United Behavioral Health*, No. 2:18-CV-808 TS, 2019 WL 1989644, at *3–4 (D. Utah May 6, 2019) (same). Therefore, the court grants Defendants' motion to dismiss Kim W.'s claims.[4]

---

[3] Kim W.'s declaration also does not indicate her legal status under the Plan. *See* ECF No. 30–2.

[4] In the event Plaintiffs can show that Kim W. is also a beneficiary under the Plan, she would still not have statutory standing because she is not "the beneficiary who is making the claim" to recover benefits or enforce her rights. *Wedekind v. United Behavioral Health*, No. 1:07-CV-26 TS, 2008 WL 204474, at *4 (D. Utah Jan. 24, 2008) (rejecting standing for a parent who was merely an additional beneficiary of the insurance plan, but finding another parent, who was the participant, and their child, who was the beneficiary denied benefits, had statutory standing.) Plaintiffs also argued that Kim W. has statutory standing because she has a "moral and legal" responsibility to pay for G.W.'s expenses. ECF No. 30 at 23. While that argument may go to Kim W.'s constitutional standing, it is not relevant to determining whether she has statutory standing under 29 U.S.C. § 1132(a)(1). Moreover, Plaintiffs have not alleged G.W.'s age in their complaint to support their argument that his status as a minor confers any parental legal responsibility on Kim W. And even assuming G.W. was a minor during the relevant time, "in the absence of a showing of incapacity," the mere fact that Kim W. "may be liable under state law for her then-minor [son's] medical expenses does not . . . give her standing under ERISA." *Wedekind*, 2008 WL 204474, at *4.

The next question is whether Michael W., as the Plan participant, has statutory standing. Defendants do not dispute that Michael W. was the Plan participant and G.W. is the Plan beneficiary who was denied coverage, and they concede that G.W. has standing. As a Plan participant, Michael W. "has standing to bring a civil action to enforce his rights under the terms of an ERISA plan or to enforce ERISA's provisions." *Alexander v. Anheuser-Busch Companies, Inc.*, 990 F.2d 536, 538 (10th Cir. 1993) (citing *Raymond v. Mobil Oil Corp.*, 983 F.2d 1528, 1532 (10th Cir. 1993)). But he must have "a colorable claim for vested benefits." *Felix v. Lucent Techs., Inc.*, 387 F.3d 1146, 1161–62 (10th Cir. 2004) (citing *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 117–18 (1989)). "[T]he requirements for a colorable claim are not stringent; [Plaintiffs] need have only a nonfrivolous claim for the benefit in question." *Horn v. Cendant Operations, Inc.*, 69 F. App'x 421, 426 (10th Cir. 2003) (citing *Kamler v. H/N Telecomm. Servs., Inc.*, 305 F.3d 672, 678 (7th Cir. 2002)). Plaintiffs have pleaded sufficient facts to establish that Michael W. has a colorable claim for vested benefits, namely, the medical expenses he personally incurred for G.W.'s care after UBH's alleged failure to act "solely in the interest of the [Plan] participants," to "provide a full and fair review of claim denials," and to comply with the requirements of the Parity Act when it denied G.W. benefits. Compl. at ¶¶ 29–31, 40–41. Therefore, Michael W. has statutory standing to enforce his rights as the participant of the Plan.

While status as a Plan participant confers statutory standing, it does not necessarily provide constitutional standing. For Michael W. to successfully allege standing to bring a suit in federal court under Article III, Plaintiffs' complaint must plausibly allege three elements. First, the plaintiff must have suffered an "injury in fact," which is defined as "an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not [merely] conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (citations

omitted). Second, there must be a "causal connection between the injury and the conduct complained of," which means the injury is "fairly traceable" to the Defendant, and "not the result of the independent action of some third party." *Id.* And third, that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* In essence, standing requires that the "plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal court jurisdiction and to justify [the] exercise of the court's remedial powers on his behalf." *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 38 (1974) (internal citations and quotation marks omitted).

Defendants argue only that Michael W. has not suffered the requisite particularized "injury-in-fact." ECF No. 13 at 22–23. That is, Defendants contend that any injury, and hence the right to sue, belongs solely to G.W. The Court rejects this argument. First, even without a showing of actual harm, an ERISA plaintiff may have standing to obtain injunctive relief if, among other claims, the plaintiff seeks to enforce the statute's fiduciary duty requirements. *See Wills v. Regence Bluecross Blueshield of Utah*, No. CIV. 2:07-CV-616BSJ, 2008 WL 4693581, at *8 (D. Utah Oct. 23, 2008) (citing *Horvath v. Keystone Health Plan East, Inc.*, 333 F.3d 450, 456 (3d Cir. 2003)); *see also Anne M.*, 2019 WL 1989644, at *3 (recognizing the relief "sought under § 1132(a)(3) is even broader than that available under § 1132(a)(1)(B) and does not depend on the recovery of benefits due to the plan participant or beneficiary."). In other words, the fiduciary duty and Parity Act requirements in ERISA create in Michael W. certain rights, including the right to have UBH act in a fiduciary capacity. *See Warth v. Seldin*, 422 U.S. 490, 500 (1975) ("The actual or threatened injury required by Art. III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing" (citations omitted)). UBH's alleged failure to act in a fiduciary capacity

and comply with the mandates of the Parity Act when it denied G.W. benefits caused Michael W. harm to his statutory rights.

Second, when ERISA plaintiffs assert standing based on a request for monetary relief, the plaintiffs must "demonstrate individual loss" caused by the alleged wrongful denial of benefits. *Wills*, 2008 WL 4693581, at *8. In *Wills*, the district court found that a father who alleged a wrongful denial of benefits for care received by his daughter, a beneficiary of his insurance plan, had standing to sue for reimbursement of medical expenses "because his payment of those expenses in the first instance subrogates him to [his child's] § 1132(a)(1)(B) claim for Plan benefits." *Id.* Similarly here, Michael W. has alleged an individual injury-in-fact flowing from his and Kim W.'s payment of G.W.'s treatment expenses at BlueFire and Catalyst and seeks reimbursement under § 1132(a)(1)(B). According to Plaintiffs, Michael W. and Kim W. paid "medical expenses . . . in an amount totaling over $88,000" that purportedly "should have been paid by the Plan." Compl. at ¶ 28. Just as in *Wills*, Michael W. "may be subrogated to [G.W.'s] claim for reimbursement, at least as to expenses he has actually paid on [his] behalf." 2008 WL 4693581, at *9. Therefore, Michael W. has pleaded a plausible injury-in-fact to him flowing from UBH's denial of benefits for G.W.'s care. Thus, Michael W. has both statutory and constitutional standing to press his ERISA claims.

## B.  ERISA Claims

Plaintiffs allege that Defendants violated ERISA and the terms of their insurance plan because UBH breached its fiduciary duties to Plaintiffs by failing to act solely in G.W.'s interest and to provide a full and fair review of G.W.'s claims for benefits. Defendants move to dismiss Plaintiffs' ERISA claims, not on their merits but because the claims are purportedly "premised on the same grounds" as the claims in the pending *Wit* class action in the Northern California district court. ECF No. 13 at 1.

The parties dispute the effect, if any, that the class action proceedings in *Wit* should have on the disposition of this motion to dismiss. Defendants argue that this action should be dismissed or stayed pending the resolution of the *Wit* class action because doing so would be "in the interest of efficiency and judicial economy." ECF No. 13 at 11–12. In support, Defendants allege that the issues and claims between the two cases substantially overlap and this court cannot predetermine the res judicata effect of the class action outcome. Plaintiffs respond that the *Wit* class action does not bar their claims because the two lawsuits are sufficiently distinguishable, Plaintiffs never received notice of the *Wit* class action and an opportunity to opt out, and to the extent Plaintiffs were on constructive notice, a late opt out should be permitted because of the Plaintiffs' excusable neglect under FED. R. CIV. P. 6(2)(b). The court construes Defendants' arguments to be that the court should halt these proceedings because of the potential res judicata effect of the *Wit* class action outcome and because of the Tenth Circuit's quasi-abstention "first-to-file" doctrine regarding duplicate litigation in two federal courts. The court rejects both contentions.

### 1. Res Judicata Effect of *Wit v. UBH* Class Action

First, the court recognizes that under basic *res judicata* principles, "a judgment in a properly entertained class action is binding on class members in any subsequent litigation." *Cooper v. Fed. Reserve Bank of Richmond*, 467 U.S. 867, 874 (1984). But applying *res judicata* in a subsequent action requires "a valid, final judgment on the merits" concerning the overlapping matter that was actually litigated in the prior class action. *Katz v. Gerardi*, 655 F.3d 1212, 1218 (10th Cir. 2011); *see also Allen v. McCurry*, 449 U.S. 90, 94 (1980) (recognizing that "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action."). To date, the *Wit* court has not entered a final judgment on the merits. On March 5, 2019, Chief Magistrate Judge Joseph Spero entered findings of fact and conclusions of law and ruled that UBH is liable to the class under ERISA for breach of

fiduciary duty and for arbitrary and capricious denial of benefits. *See Wit*, 2019 WL 1033730, at *51–55. As of now, the district court has received briefing on the appropriate remedy and other motions regarding the class, but is yet to enter a final judgment on the merits.[5] Indeed, Defendants concede that at this stage, the *Wit* case has merely provided "a non-final . . . order." ECF No. 35 at 9. Thus, the *Wit* class action currently has no formal preclusive effects on the Plaintiffs' claims.

Despite the lack of a final judgment, Defendants argue that because the potential preclusive effects of the *Wit* class action "cannot be predetermined," this matter should not proceed. ECF No. 13 at 12. For support, Defendants rely on *Cooper v. Fed. Reserve Bank of Richmond*, 467 U.S. 867 (1984), and *Harrison v. Lewis*, 559 F. Supp. 943 (D.D.C. 1983). First, as a practical matter, Defendants' argument improperly puts the cart before the horse. As indicated above, the court cannot rule on Defendants' Motion to Dismiss in reliance on the outcome of the *Wit* class action case without knowing that outcome. Second, the authorities relied on by Defendants do not support their arguments.

In *Cooper*, the Supreme Court examined whether a prior judgment in a class action that determined an employer had not engaged in a pattern of racial discrimination against a certified class of employees would preclude one of the class members from bringing a subsequent individual claim of racial discrimination against the employer. 467 U.S. at 869. The Court found that the final judgment in the prior pattern or practice class action case did not preclude subsequent individual claims of discrimination. *Id.* at 878. Rather, the class action merely barred class members from the prior class or other plaintiffs "in any other litigation with the [defendant] from relitigating the question whether the [defendant] engaged in a pattern and practice of

---

[5] The *Wit* court is currently presiding over the Defendants' motion for class decertification pursuant to FED. R. CIV. P. 23(c)(1)(C) and briefing regarding appropriate remedies. *See Wit et al v. UnitedHealthcare Insurance Company et al*, 3:14-cv-02346 (N.D. Cal. May 21, 2014), Court Docket Nos. 425 and 426.

discrimination against black employees during the relevant time period." *Id.* at 880. In sum, rather than expanding *res judicata* principles to halt individual proceedings in one court pending resolution of a class action claim in another, as Defendants urge, *Cooper* limits the reach of *res judicata*, at least with respect to a prior rejected pattern or practice employment discrimination class action claim having no preclusive effects on future individual discrimination claims.

Defendants' reference to *Harrison v. Lewis* is equally unavailing. In that case, a federal district court in Washington, DC, presided over class-wide and individual claims of race and sex discrimination against their employer. *Harrison*, 559 F. Supp. at 946. As Defendants correctly point out, the district court noted that "in general, the court conducting a class action cannot predetermine the res judicata effect of its judgment." *Id.* at 947 (citing FED. R. CIV. P. 23(c)(3) adv. comm. cmt (1966)). Contrary to Defendants' argument, though, the court merely observed this reality as a challenge for adjudicating parallel class and individual claims but did not rely on it as a reason to dismiss or stay subsequently-filed individual claims of discrimination. *See id.* Rather, the court observed that even though it had ruled in a prior decision that plaintiffs had not demonstrated the existence of class-wide sex discrimination, plaintiffs belonging to the class could still proceed on "individual claims of disparate treatment" because of the distinct nature of those claims. *Id.*

In short, neither *Cooper* nor *Harrison* support Defendants' reliance on res judicata principles here. Although it is true that the preclusive effect of the *Wit* class action cannot be predetermined until final judgment is entered, Defendants have not demonstrated why the pendency of that class action would justify staying or dismissing all or part of Plaintiffs'

Complaint. Therefore, it is premature to determine what, if any, preclusive effect the *Wit* class action may have on the present case.[6]

### 2. First-to-File Rule

Defendants also implicitly rely on the Tenth Circuit's quasi-abstention "first-to-file" doctrine. Although "no precise rule" has developed to govern when abstention is proper between two federal district courts addressing similar suits between the same parties in interest, *see Colo. Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976), the Tenth Circuit has adopted a "first-to-file" equitable rule to avoid duplicative litigation, *Wakaya Perfection, LLC v. Youngevity Int'l, Inc.*, 910 F.3d 1118, 1122 (10th Cir. 2018); *see also Hospah Coal Co. v. Chaco Energy Co.*, 673 F.2d 1161, 1163 (10th Cir. 1982) (recognizing "the general rule that when two courts have concurrent jurisdiction, the first court in which jurisdiction attaches has priority to consider the case."). Similar to *Colorado River* abstention used to resolve parallel state and federal litigation, the first-to-file rule "'permits,' but does not require, a federal district court to abstain from exercising its jurisdiction in deference to a first-filed case in a different federal district court." *Wakaya*, 910 F.3d at 1124 (citation omitted). The rule is a discretionary doctrine, resting on principles of comity and conserving judicial resources "to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result." *Buzas Baseball, Inc. v. Bd. of Regents of Univ. Sys. of Georgia*, 189 F.3d 477, 1999 WL 682883, *3 (10th Cir. 1999) (unpublished) (internal citation and quotations omitted).

---

[6] The court recognizes that if the *Wit* court proceeds to a final judgment, the res judicata analysis may unfold differently. As discussed below, the opportunity for Plaintiffs to opt out of the class action is in the hands of the *Wit* court. To avoid potential preclusive effects of the outcome in *Wit*, Plaintiffs must request a late opt out from the *Wit* court.

To implement the first-to-file doctrine, the Tenth Circuit instructs that the court "cannot resort to a 'rigid mechanical solution.'" *Wakaya*, 910 F.3d at 1124 (quoting *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183 (1952)). Rather, the court considers equitable factors bearing on the prudence of abstaining in a subsequently-filed case, including "(1) the chronology of events, (2) the similarity of the parties involved, and (3) the similarity of the issues or claims at stake." *Id*. But these considerations are not exhaustive, and other equitable factors may "merit not applying the first-to-file rule in a particular case." *Id.* at 1127 (citing *Baatz v. Columbia Gas Transmission, LLC*, 814 F.3d 785, 789 (6th Cir. 2016)). If the court in the second-filed case decides the proper course is to abstain under the first-to-file rule, "it may stay the case, transfer it to the first filed court, or, in rare cases, dismiss the case entirely." *Crocs, Inc. v. Cheng's Enterprises, Inc.*, No. 06-CV-00605-PAB-KMT, 2015 WL 5547389, at *3 (D. Colo. Sept. 21, 2015) (collecting cases discussing the proper procedural disposition in first-to-file abstention). Based on material differences between the issues presented in this case and the *Wit* class action, and the equitable considerations at play, the court declines to abstain pursuant to the first-to-file rule.

### a. Chronology of Events

First, the court compares the chronology of events between the two concurrent cases. In the Tenth Circuit, "'the first court in which jurisdiction attaches has priority to consider the case' and jurisdiction 'relates back to the filing of the complaint.'" *Wakaya*, 910 F.3d at 1124 (quoting *Hospah Coal Co.*, 673 F.2d at 1163). Here, the *Wit* plaintiffs filed their class action claims on May 21, 2014. Plaintiffs in this dispute filed on October 19, 2018. This factor favors giving priority to the *Wit* court. *See id.* at 1124 n.4.

### b.    Similarity of the Parties and the Issues or Claims at Stake

Next, the court considers whether the two cases "bear substantial overlap in (1) the parties and (2) the issues or claims." *Wakaya*, 910 F.3d at 1126. The parties need not be "perfectly identical," *Baatz*, 814 F.3d at 790, and "the issue must only be substantially similar in that they seek like forms of relief and hinge on the outcome of the same legal/factual issues," *Shannon's Rainbow, LLC v. Supernova Media, Inc.*, 683 F. Supp. 2d 1261, 1278-79 (D. Utah 2010). When the first-filed case is a class action and the second-filed case is an individual claim, the first-to-file rule counsels in favor of abstention when the class action "covers substantially the same parties and issues and has the potential to completely resolve" the subsequent individual claim. *Baatz*, 814 F.3d at 790. Although the parties between the two cases substantially overlap, the issues and claims do not. Therefore, deference to the first-filed class action proceedings is not warranted here.

### i.    Overlap of the Parties

The parties involved in the two cases are substantially similar. When a class action is the first-filed suit, the comparison is to the class members, not to the named representatives. *See Letbetter v. Local 514, Transp. Workers Union of Am.*, No. 14-CV-00125-TCK-FHM, 2014 WL 4403521, at *5 (N.D. Okla. Sept. 5, 2014) (using putative class members as the comparison in applying the first-to-file rule); *Chieftain Royalty Co. v. XTO Energy, Inc.*, 2011 WL 1533073, at *2 (E.D. Okla. Apr. 22, 2011) (same). The substantial overlap of Defendants in the two lawsuits is not in contention. While the Plaintiffs here also name the plan provided through Wells Fargo as a defendant, both cases focus their claims against the UBH defendant as the insurance plan administrator. *See* Compl. at 2 ¶ 5; *Wit*, 2019 WL 1033730, at *5.

Plaintiffs, however, argue that they are not members of the class in the *Wit* litigation—and by implication are not overlapping parties for purposes of the first-to-file analysis—because 1)

Plaintiffs attest they never received notice of the class action proceedings and never had an opportunity to opt out of the class, and 2) to the extent they had constructive notice, this court should recognize Plaintiffs' ability to file a late motion to opt out because their delay was caused by "excusable neglect" under FED. R. CIV. P. 6(a)(2). *See* ECF No. 30 at 4–8.

First, Plaintiffs' actual notice argument is without merit. The Supreme Court has directed that absent class members "must receive notice plus an opportunity to be heard and participate in the [class action] litigation, whether in person or through counsel." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). But under Rule 23, absent class members are only entitled to receive "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort[,]" which may include notice provided through mail, electronic communications, or "other appropriate means." FED. R. CIV. P. 23(c)(2)(b); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173–74 (1974) (requiring notice that is "reasonably calculated, under all the circumstances" to "all members who can be identified through reasonable effort" (citations omitted)). In the Tenth Circuit, actual receipt of notice is not necessary, so long as the "best practicable notice" was given to the absent class members. *See DeJulius v. New England Health Care Employees Pension Fund*, 429 F.3d 935, 944 (10th Cir. 2005) (holding that the "due process right does not require *actual* notice to each party intended to be bound by the adjudication of a representative action" (emphasis in original)); *In re Integra Realty Res., Inc.*, 262 F.3d 1089, 1110–11 (10th Cir. 2001) (holding that a class action notice process satisfied Rule 23 and Due Process requirements, even though the record showed that only

seventy-seven percent of class members actually received notice). Therefore, the court rejects Plaintiffs' actual notice arguments.[7]

Second, Plaintiffs' request for a late opt out because of excusable neglect is not properly before this court. The *Wit* court ruled that certification of the class was appropriate under Rule 23(b)(1), 23(b)(2), and 23(b)(3). *See* 317 F.R.D. at 133–41. For class actions certified under Rule 23(b)(3), putative class members are entitled to notice that "the court will exclude from the class any member who requests exclusion." FED. R. CIV. P. 23(c)(2)(B)(v). And if a class certified under Rule 23(b)(3) reaches a settlement, absent class members have a new opportunity to be excluded, and "the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so." FED. R. CIV. P. 23(e)(4). Moreover, the Rule 23 advisory committee notes recognize that "the interests of the individuals in pursing their own litigations may be so strong" that "the court is required to direct notice to the members of the class of the right of each member to be excluded from the class upon his request." FED. R. CIV. P. 23 adv. comm. cmt. But, "[a] member who does not request exclusion may, if he wishes, enter an appearance in the action through his

---

[7] In any event, the constructive notice Plaintiffs received was adequate according to the *Wit* court. As Defendants point out, the *Wit* court was satisfied that the class administrator would provide the "best notice practicable" through a combination of U.S. mail, email, and Internet publication on two websites, despite the fact that at the time notice was given, the class administrators lacked mailing addresses for "37-38% of class members whose requests for coverage were denied in 2011–13." Stipulation and Order Regarding Class Notice Deadline at 2, *Wit v. UnitedHealthcare Insurance Company et al.*, 3:14-cv-02346-JCS (N.D. Cal. June 20, 2017), Court Dkt. No. 263. This court will not now question the wisdom of that decision. And even if Plaintiffs did not receive individual notice by mail or email, many courts have ruled that Internet-published notice, among other efforts, is sufficient to meet Rule 23 and Due Process requirements. *See, e.g.*, *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 536–37 (3d Cir. 2004); *Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 786 (7th Cir. 2004); *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 940 (9th Cir. 2011); *Adams v. S. Farm Bureau Life Ins. Co.*, 493 F.3d 1276, 1280 (11th Cir. 2007). Indeed, there are many reasons why both class action judges and class representatives may prefer to provide notice through the Internet, including increased access by putative class members, reduced costs, the ability to transmit up-to-date information, and the ability to target notice to certain subsets of potential class participants. *See, e.g.*, Robert H. Klonoff et. al., *Making Class Actions Work: The Untapped Potential of the Internet*, 69 U. Pitt. L. Rev. 727, 757 (2008); Jordan S. Ginsberg, *Class Action Notice: The Internet's Time Has Come*, 2003 U. Chi. Legal F. 739, 772 (2003).

counsel; whether or not he does so, the judgment in the action will embrace him." *Id.* Under these rules, putative class members who desire to opt out and pursue their claims on an individual basis must do so before the class action court.[8] In short, Plaintiffs' ability to file a late motion to opt out of the *Wit* class action under FED. R. CIV. P. 6(2)(b) must be presented to the *Wit* court.

Notwithstanding Plaintiffs' ability to request that they be allowed to opt out of the *Wit* class action, it appears at least some of Plaintiffs' claims qualify them as members of the first certified class in *Wit*. In *Wit*, the relevant certified class covers "[a]ny member of a health benefit plan governed by ERISA whose request for coverage of residential treatment services for a mental illness or substance use disorder was denied by UBH, in whole or in part, between May 22, 2011 and June 1, 2017, based upon UBH's Level of Care Guidelines or UBH's Coverage Determination Guidelines." 2019 WL 1033730, at *4. Here, Plaintiffs' ERISA claims assert that UBH, relying on its Guidelines, wrongfully denied coverage of G.W.'s treatment at a residential treatment facility for mental illness or substance use disorders between October 11, 2016, and February 20, 2017. Therefore, the court finds that, although Plaintiffs' are not yet bound by the class action in *Wit*, the parties involved in the two cases substantially overlap for purposes of a first-to-file analysis.

### ii.  Overlap of the Claims

The next issue is whether the claims in the parallel federal cases substantially overlap. The court need not defer to the first-to-file rule when the two cases merely have some similarity but do not substantially overlap. *See Lipari v. U.S. Bancorp NA*, 345 F. App'x 315, 317 (10th Cir. 2009)

---

[8] Each of the cases Plaintiffs cite with regard to an untimely attempt to opt-out of a class action were resolved by the respective class action district court. *See Burns v. Copley Pharm., Inc.*, 132 F.3d 42, 1997 WL 767763, *2–3 (10th Cir. 1997) (discussing situation where plaintiff's late motion to opt out was filed in state court, removed to federal court, and consolidated in a multi-district class action where it was ruled on by the class action trial court); *In re Four Seasons Sec. Laws Litig.*, 493 F.2d 1288, 1290–91 (10th Cir. 1974) (discussing the plaintiffs' ability to file a late opt out with the class action trial court); *Silber v. Mabon*, 18 F.3d 1449, 1452 (9th Cir. 1994) (same)

(observing that the first-to-file rule "does not pertain to distinct controversies arising seriatim."); *see also David S.*, 2019 WL 4393341, at *3 (rejecting first-to-file abstention where Defendant "provides the court with no analysis of the ERISA claims each class action allows, whether Plaintiffs' ERISA claim is encompassed by the class actions, and whether the class actions include Parity Act claims."). In other words, "[t]he issues need not be identical, but they must 'be materially on all fours' and 'have such an identity that a determination in one action leaves little or nothing to be determined in the other.'" *Baatz*, 814 F.3d at 791 (citations omitted). The court recognizes there is some similarity between the issues presented in the two cases, but Defendants have not demonstrated that Plaintiffs' ERISA claim involving BlueFire and Parity Act claims for both BlueFire and Catalyst substantially overlap with the *Wit* class action to a degree that warrants abstention under the first-to-file rule.

This case involves two statutory claims under ERISA and the Parity Act against UBH's alleged wrongful denial of insurance coverage for G.W.'s care at two different mental health/substance abuse treatment centers, with BlueFire offering outdoor behavioral therapy and Catalyst providing extended inpatient residential care. The ERISA claims are for alleged breach of fiduciary duty under 29 U.S.C. § 1104(a)(1), which requires insurance administrators such as UBH to "discharge its duties with respect to a plan solely in the interest of the participants and beneficiaries." *See* Compl. at ¶ 29. Plaintiffs seek to enforce this requirement through 29 U.S.C. § 1132(a)(1)(B). *Id.* at ¶ 8. For its Parity Act claims, Plaintiffs contend that UBH has violated Congress's prohibition of insurance administrators treating coverage for sub-acute inpatient treatment for mental health conditions differently than for analogue surgical/medical sub-acute inpatient care under 29 U.S.C. § 1185a(a)(3)(A)(ii). Compl. at ¶¶ 34–36, 39. Plaintiffs seek to enforce the Parity Act through Section 502(a)(3) of ERISA, *see* Compl. at ¶¶ 33, 41, which enables

"a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3); *see also Joseph F. v. Sinclair Servs. Co.*, 158 F. Supp. 3d 1239, 1259 n.118 (D. Utah 2016) (noting that "Congress enacted the Parity Act as an amendment to ERISA, making it enforceable through a cause of action under 29 U.S.C. § 1132(a)(3).")

Plaintiffs make four separate allegations and claims for relief: (1) UBH committed a breach of fiduciary duty in violation of ERISA when it denied coverage for G.W.'s continued care at Catalyst; (2) UBH violated the Parity Act, as enforced through ERISA, when it denied continued coverage at Catalyst using more restrictive criteria than for analogue surgical or medical treatment; (3) UBH committed a breach of fiduciary duty in violation of ERISA when it denied coverage for G.W.'s care at BlueFire; and (4) UBH violated the Parity Act, as enforced through ERISA, when it denied coverage of G.W.'s care at BlueFire in accordance with a purported categorical exclusion of outdoor behavioral therapy that in practice only restricts care for mental health conditions.[9]

---

[9] Defendants argue in a footnote that the Plaintiffs' claims under ERISA for "breach of fiduciary duty" and their Parity Act claims are duplicative and should be dismissed. *See* ECF No. 35 at 13 n.3. Defendants contend the Parity Act allegations are "merely a repackaged claim for benefits" under ERISA because the two theories purportedly seek the same relief. *Id.* For support, Defendants cite language from the Supreme Court's decision in *Varity Corp. v. Howe*, 516 U.S. 489 (1996), which discusses the statutory structure of ERISA and proper role of the enforcement provision in Section 502(a)(3). *Id.* But Defendants misinterpret the import of *Varity Corp.* on the Plaintiffs' Parity Act claims and excise key language from the passage they cite from that case. The Court observed that the structure of ERISA "suggests that these 'catchall' provisions" such as Section 502(a)(3), "*act as a safety net*, offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy." *Varity Corp.*, 516 U.S. at 512 (emphasis added to language removed from Defendants' citation). Therefore, rather than functioning as a bar to Plaintiffs' claims, as Defendants argue, the *Varity Corp.* opinion recognizes that Section 502(a)(3) may be used to pursue claims for equitable relief that are not available in other sections of ERISA. Plaintiffs' alleged Parity Act violations exemplify such a cause of action. *See Joseph F.*, 158 F. Supp. 3d at 1259 n.118. Moreover, Plaintiffs' two legal theories seek distinct forms of relief. Plaintiffs' breach of fiduciary duty claims under Section 502(a)(1)(B) seek "benefits due to [them] under the terms of the plan," namely, $88,000 in asserted damages for denied benefits. *See* Compl. at ¶ 28, 31–32. Distinctly, Plaintiffs' Parity Act claims brought pursuant to Section 502(a)(3) seek "appropriate equitable relief," including "surcharge, estoppel, restitution, disgorgement, injunction, accounting, constructive trust, equitable lien, declaratory relief, unjust enrichment, and specific performance." *Id.* at ¶ 41. The types of equitable relief that Plaintiffs request are consistent with Supreme Court precedent interpreting the meaning of "other

In contrast, the *Wit* class action, in relevant part, involves two types of ERISA claims against UBH's alleged wrongful denial of coverage for one type of provider of substance abuse and mental health treatment. First, the class plaintiffs assert a breach of fiduciary duty claim under 29 U.S.C. § 1132(a)(1)(B), alleging that UBH violated its duty of loyalty, duty of care, and duty to comply with plan terms when it denied coverage of inpatient residential mental health and substance abuse treatment services. *Wit*, 2019 WL 1033730, at *51–54. Second, class plaintiffs assert a wrongful denial of benefits claim under 29 U.S.C. §§ 1132(a)(1)(B)–(3)(B), alleging that UBH's denial of benefits for residential treatment based on its internal guidelines fell below generally accepted or mandated standards of care. *Id.* at *54–55. The *Wit* court found UBH liable on each claim. *Id.* at *51–55. The *Wit* case does not reference or contain any causes of action under the Parity Act. Nor does the case involve any denials of coverage for outdoor behavioral health programs. In short, the *Wit* class action has overlap with and potential to dispose of only one of Plaintiffs' four claims—the ERISA claim alleging Defendants breached their fiduciary duty when they denied continued coverage for G.W.'s care at the Catalyst residential inpatient treatment facility.[10]

---

appropriate equitable relief" available under Section 502(a)(3). *See CIGNA Corp. v. Amara*, 563 U.S. 421, 438–442 (2011) (permitting the district judge to reform the terms of a benefits plan and enforce the terms of the reformed plan as a remedy). In sum, Plaintiffs' first and second causes of action are distinct in terms of the nature of the alleged harm, the theory of liability, the ERISA enforcement mechanism, and the relief sought.

[10] The cases cited by Defendants in favor of first-to-file abstention are distinguishable because the circumstances here are much less overlapping than in situations where the second-filed case is "simply a subset" of a first-filed class action, *see Roderick Revocable Living Tr.*, 679 F. Supp. 2d at 1298, or where the claims or counterclaims in the prior action are identical to the claims or counterclaims brought in the latter, *see Hospah Coal* Co., 673 F.2d at 1164–65 (abstaining where two cases involve identical claims); *Mohn v. Zinke*, 688 F. App'x 554, 556 (10th Cir. 2017) (upholding dismissal where plaintiff filed a lawsuit that relitigated identical claims to benefits decided in a 2009 class action settlement, in which plaintiff had submitted a claim but was denied compensation); *Culbertson v. Midwest Uranium Co*, 132 F. Supp. 678, 680–81 (D. Utah 1955) (enforcing a first-to-file rule and staying subsequent litigation brought during pendency of a prior action in a different federal district court by the same plaintiff, against the same corporation, seeking an overlapping form of relief). And other cases Defendants cite involve parallel state and federal cases, which are irrelevant to the first-to-file analysis. *See In re Imprelis Herbicide Mtg., Sales Practices & Prods. Liab. Litig.*, MDL No. 2284, 11-md-02284, 2014 U.S. Dist. LEXIS 169559 (E.D. Pa. Dec. 5, 2014) (involving first-

Additionally, Plaintiffs' three other claims involve different factual issues than the *Wit* class action. For example, to be successful on their ERISA claims concerning BlueFire, Plaintiffs must allege and prove that Defendants have applied a policy of denying coverage for outdoor behavioral therapy, that such treatment should be eligible for coverage under their insurance plan, and that UBH's failure to cover BlueFire was because of a breach of fiduciary duty. Under their Parity Act claims, Plaintiffs must allege and prove that there is a disparity in the way UBH makes coverage decisions concerning care for mental health conditions as compared to analogous medical or surgical treatment for inpatient residential treatment at Catalyst and outdoor behavioral therapy at BlueFire. Thus far, however, the *Wit* class action has not encompassed these factual issues. *See* 2019 WL 1033730, at *14–51 (analyzing facts related to a comparison of UBH Guidelines to generally accepted standards of care); *Id.* at *52–54 (analyzing facts concerning UBH's alleged conflicts of interest).

In sum, the *Wit* class action and this suit do not have substantial overlap because they do not "hinge on the outcome of the same legal/factual issues." *Shannon's Rainbow, LLC*, 683 F. Supp. 2d at 1279; *see also Ad Astra Recovery Servs., Inc. v. Heath*, No. 18-1145-JWB, 2019 WL 917018, at *2 (D. Kan. Feb. 21, 2019) (declining to stay a second-filed case because it did "not appear that [plaintiff] would be bound by an outcome" in the first-filed case). Because at least three of Plaintiffs' four claims for relief are likely to proceed regardless of any preclusive effects of the *Wit* decision, the court concludes that the two suits are not duplicative. Therefore, these differences counsel against deferring to the first-filed class action.

---

filed federal class action settlement and second-filed state court claim by members of the class); *Love v. Blue Cross & Blue Shield Ass'n*, No. 03-21296-CIV-MORENO/TORRES, 2008 U.S. Dist. LEXIS 125171, *59 (S.D. Fla. June 12, 2008) (involving first-filed federal class action and second-filed state individual action).

### c.    Other Equitable Considerations

Multiple other equitable factors also weigh against abstention. "After determining the sequence and similarities in the cases, courts must also determine whether any equitable considerations merit not applying the first-to-file rule in a particular case." *Wakaya*, 910 F.3d at 1127 (citations and alterations omitted). For example, the first-to-file rule may be eschewed if the case falls into a category of "special circumstances" involving the need to avoid "misuse of litigation in the nature of vexatious and oppressive foreign suits," *O'Hare Int'l Bank v. Lambert*, 459 F.2d 328, 331 (10th Cir. 1972), to ensure the court does not reward forum shopping, *see Span-Eng Assocs. v. Weidner*, 771 F.2d 464, 470 (10th Cir. 1985), and to prevent plaintiffs from filing an anticipatory suit for declaratory judgment, *see Buzas Baseball, Inc.*, 1999 WL 682883, at *3. None of these special circumstances are present here. There is no indication that Plaintiffs sought to duplicate or anticipate litigation in the *Wit* class action and, instead, Plaintiffs deny having actual notice of the *Wit* case. *See* ECF Nos. 30–1 at ¶¶ 6–10, 30–2 at ¶¶ 6–10. There is also no indication that Plaintiffs engaged in forum shopping. Rather, Plaintiffs contend this court is an appropriate forum to decide Plaintiffs' claims because G.W. is a resident of Utah, "UBH has a claim processing center in Utah, and because a significant portion of the treatment at issue took place in Utah." Compl. at 1 ¶ 2, 2 ¶ 7. Therefore, the "special circumstances" that concern the risks of vexatious litigation, forum shopping, or anticipatory filing are not pertinent to the first-to-file analysis here.

The Tenth Circuit has not formalized which "other equitable factors may bear on the inquiry." *Wakaya*, 910 F.3d at 1124. But the *Wakaya* Court explicitly left open the possibility that "the equitable factors bearing on state-federal concurrent litigation may also apply." *Id.* at 1127. For example, "when the balance of convenience favors the second filed action," the court may exercise its discretion and reject abstaining under the first-to-file rule. *Crocs, Inc.*, 2015 WL

5547389, at *3; *see also Cherokee Nation v. Nash*, 724 F. Supp. 2d 1159, 1166 (N.D. Okla. 2010) ("The inquiry still requires selection of the more appropriate forum, since the first-filed rule is only a presumption that may be rebutted by proof of the desirability of proceeding in the forum of the second-filed action." (citing *Employers Ins. of Wausau v. Fox Entertainment Group, Inc.*, 522 F.3d 271, 276 (2d Cir. 2008)). Among the factors potentially relevant to the balance of convenience here are (1) "the avoidance of piecemeal litigation," (2) "the sequence in which the courts obtained jurisdiction," and (3) "the potential for the [first-filed] court action to provide an effective remedy for the [second-filed] plaintiff." *Wakaya*, 910 F.3d at 1122 (citing *Fox v. Maulding*, 16 F.3d 1079, 1082 (10th Cir. 1994)); *accord Employers Ins. of Wausau*, 522 F.3d at 275 (listing similar and additional factors bearing on the balance of convenience analysis). The court finds these factors useful for its equitable determination here and rules that each factor counsels against abstention.

First, the interest in avoiding piecemeal litigation warrants retaining jurisdiction over the Plaintiffs' ERISA and Parity Act claims. The Tenth Circuit has recognized that a purpose of the first-to-file rule is "to avoid piecemeal resolution of issues that call for a uniform result." *Buzas Baseball, Inc.*, 1999 WL 682883, at *2 (quoting *Sutter Corp. v. P & P Indus., Inc.*, 125 F.3d 914, 917 (5th Cir. 1997)). As detailed above, the overlap between the *Wit* class action and the present case is limited to one of Plaintiffs' four claims for relief. The court's power to stay entire proceedings or individual claims "is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants," *Landis v. North American Co.*, 299 U.S. 248, 254 (1936), and issuing a stay on the overlapping claim would result in the type of piecemeal litigation the first-to-file rule seeks to avoid. Therefore, the risks involved in excising parts of this litigation, including the potential further delay in resolving this case while waiting for the *Wit* outcome, cuts against abstention.

Second, the court may consider the sequence in which the two courts obtained jurisdiction. *Wakaya*, 910 F.3d at 1122 (citing *Fox*, 16 F.3d at 1082). While the *Wit* class action was the first-filed suit, the overall chronology of events between the two cases is otherwise substantially intertwined. And, unlike many of the cases cited by Defendants to support abstention, it is not at all evident from the sequence here that Plaintiffs have or even could have skirted jurisdiction in the first-filed class action to file their current individual claims. *See, e.g.*, *Hospah Coal* Co., 673 F.2d at 1164–65. The sequence of events here weighs against abstention.

The court recognizes that G.W.'s claim for benefits and UBH's initial denials occurred during the relevant time period covered by the *Wit* certified class. *See* 317 F.R.D. at 116. But while the *Wit* court was certifying the classes, administering the notice publication process, and conducting the ten-day bench trial, Plaintiffs in this case were seeking care for G.W. and pursuing appeals processes with UBH to secure coverage.

On June 26, 2016, G.W. began his program at BlueFire and on September 16, 2016, G.W. was admitted to Catalyst. Subsequently, while G.W. was still being treated at Catalyst and covered by UBH, the *Wit* court certified the classes on September 19, 2016. On April 17, 2017, Plaintiffs first filed their appeal of UBH's denial of coverage for the approximately five additional months G.W. spent at Catalyst. And on June 16, 2017, Plaintiffs also appealed UBH's denial of benefits for G.W.'s care with BlueFire. Meanwhile in the *Wit* class action, on June 20, 2017, the court directed that notice be provided to absent class members by mail, email, and Internet publication on websites administered by the class. The websites went live on June 20, 2017, and class administrators mailed notices to identified class members on June 23, 2017. The deadline to opt-out of the class was July 27, 2017. On September 28, 2017, the district court consolidated for trial the *Wit* classes and another class action regarding UBH's alleged denials of outpatient care

coverage. The parties had consented to adjudication before Chief Magistrate Judge Joseph Spero, who completed a ten-day bench trial on November 1, 2017. During all this activity in *Wit*, Plaintiffs in this case were exhausting their internal claims appeal processes. UBH completed the appeals for Plaintiffs by issuing a final denial of coverage for G.W.'s treatment at Catalyst on November 2, 2017, and for BlueFire on February 14, 2018.[11]

Even the consideration of this motion has traversed the active changes occurring in the *Wit* litigation. Defendants filed its motion to dismiss on February 13, 2019. After the *Wit* court issued its liability determination on March 5, 2019, *see* 2019 WL 1033730, at *51–55, Plaintiffs filed their opposition to the motion to dismiss on April 1, 2019. Plaintiffs claim they were not notified of the *Wit* class, were not on the final, full class lists, and their actions in this case demonstrate they did not intend to participate in a class-wide claim against UBH. ECF No. 30 at 5–6. Defendants filed their reply brief on April 25, 2019. To date, final resolution of the *Wit* case is pending UBH's motion for class decertification and a ruling on the appropriate remedies.

---

[11] This series of events is quite different from other cases cited by Defendant where a second-filed court has abstained under the first-to-file rule. In *Hospah Coal Co.*, for example, two utility companies filed a lawsuit in Texas federal district court alleging a conspiracy that violated federal and state antitrust law. 673 F.2d at 1162. Three days later, parties to the alleged conspiracy filed a declaratory judgment action in New Mexico federal district court, naming the utility company plaintiffs in the first action as defendants in the second. *Id.* Then, the New Mexico federal district court entered a preliminary injunction to enjoin the first-filed Texas district court proceedings. *Id.* Thereafter, the utility company parties filed another suit in the same New Mexico district court raising the same allegations as the original Texas district court filing. *Id.* at 1163. The Tenth Circuit applied the first-to-file rule and held that the preliminary injunction issued by the second-filed New Mexico district court was improper. *Id.* at 1164. The court found that the alleged conspirators could not circumvent their obligation to file a defense of improper venue in the first-filed suit "by filing suit for injunctive relief in a separate forum." *Id.* at 1163. Doing so would improperly permit a subsequent declaratory judgment action to be used by the same litigants "as a substitute for the rules of civil procedure in response to a pending lawsuit" or "as yet another weapon in a game of procedural warfare." *Id.* at 1164–65 (citations omitted). Therefore, the second-filed court should have abstained in favor of the first-filed court. *Id.* at 1165. The present case, by contrast, has no indications or allegations that Plaintiffs are using this lawsuit to circumvent the rules of civil procedure or as a weapon of procedural warfare. Rather, Plaintiffs' unrebutted explanation is that they had no knowledge of the *Wit* class action and, in fact, were pursing their own internal appeals as the *Wit* case proceeded.

In short, while the filing dates of the respective suits favor giving priority to the *Wit* class action, the court, as a matter of equity, gives due consideration to the fact that the overall sequence of events in the two cases has developed in tandem. Under these circumstances, it is not at all evident that Plaintiffs even could have participated in the *Wit* litigation while they pursued their internal appeals with UBH. Therefore, abstention to the first-filed court is less justified.

Third, the court considers "the potential for the [first-filed] court action to provide an effective remedy for the [second-filed] plaintiff." *Wakaya*, 910 F.3d at 1122 (citing *Fox*, 16 F.3d 107). A second-filed court may decline abstention "given the jurisdictional and procedural hurdles the plaintiffs face to have their claims heard in" the first-filed class action. *Baatz*, 814 F.3d at 787–88. As discussed above, Plaintiffs may not have had an opportunity to participate in *Wit* or to opt-out of the class action because that court had already certified the relevant class and closed the opt-out period (before the Plaintiffs completed their appeals for coverage with UBH), and made a ruling on liability (before the parties finished briefing this motion). As a result, abstaining here would likely erect jurisdictional or procedural barriers to Plaintiffs' ability to litigate at least some of their claims, and these practical encumbrances favor retaining jurisdiction.

To summarize, the chronology of the two lawsuits and the substantial overlap between the parties favor abstention. On the other hand, the lack of substantial overlap between the issues and claims and the other equitable considerations at play—including the avoidance of piecemeal litigation, the sequence in which the courts obtained jurisdiction, and the need to provide an effective forum for Plaintiffs—weigh against abstention. On balance, the court concludes that the important public interest in conserving judicial resources that underpins the first-to-file doctrine is outweighed by the countervailing interest in maintaining jurisdiction over a distinct lawsuit and providing Plaintiffs with an appropriate forum for their ERISA and Parity Act claims. Therefore,

the court will not abstain under the first-to-file rule and the pending *Wit* class action has no preclusive effects on this case. Because Defendants rely on the *Wit* class action as the only ground for dismissing the Plaintiffs' ERISA claims, the court denies the Defendants' Motion to Dismiss those claims.

### C. PARITY ACT CLAIMS

Defendants also move to dismiss Plaintiffs' Parity Act claims on the grounds that they are inadequately pled. ECF No. 13 at 16. The Parity Act requires that benefits in a plan that provides for "both medical and surgical benefits and mental health or substance use disorder benefits" must not impose more restrictions on the latter than it imposes on the former. 29 U.S.C. § 1185a(a)(3)(A). As this court recently stated, "[i]n effect, the Parity Act prevents insurance providers from writing or enforcing group health plans in a way that treats mental and medical health claims differently." *David S.*, 2019 WL 4393341, at *3 (citing *Munnelly v. Fordham Univ. Faculty*, 316 F. Supp. 3d 714, 728 (S.D.N.Y. 2018) ("Essentially, the Parity Act requires ERISA plans to treat sicknesses of the mind in the same way that they would a broken bone.")). Plaintiffs assert that UBH violated the Parity Act because its "utilization of acute criteria to determine the medical necessity of sub-acute mental health care leads to 'disparate operation' of the Plan" as compared to the criteria UBH uses to determine benefits "for medical/surgical disorders in the same level of care." ECF 30 at 12, 14. And Plaintiffs contend that Parity Act "claims generally require further discovery to evaluate the full disparity." *Id.* at 14–15. Defendants urge the court to follow a more stringent pleading standard and argue that the face of the Plan does not promulgate unequal criteria for coverage decisions involving mental health/substance abuse care compared to medical/surgical care. ECF 15 at 13–16. The court concludes that Plaintiffs have pled sufficient facts to survive Defendants' Motion to Dismiss their Parity Act claims.

### 1. Pleading a Parity Act Claim

The first question is how to successfully assert a Parity Act claim. "Congress enacted the [Parity Act] to end discrimination in the provision of insurance coverage for mental health and substance use disorders as compared to coverage for medical and surgical conditions in employer-sponsored group health plans." *Michael D. v. Anthem Health Plans of Kentucky, Inc.*, 369 F. Supp. 3d 1159, 1174 (D. Utah 2019) (quoting *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 356 (2d Cir. 2016)). The Parity Act requires that insurance administrators such as UBH use analogous "treatment limitations" for mental and medical healthcare claims. 29 U.S.C. §§ 1185a(a)(3)(A)(ii)–(B)(iii) (defining "treatment limitations" and prohibiting insurance providers from applying limitations unequally to mental and physical health treatments). Treatment limitations include "both quantitative treatment limitations, which are expressed numerically (such as 50 outpatient visits per year), and nonquantitative treatment limitations, which otherwise limit the scope or duration of benefits for treatment under a plan or coverage." 29 C.F.R. § 2590.712(a); *see also David S.*, 2019 WL 4393341, at *3 (discussing treatment limitations). In terms of mental health coverage, the Parity Act implementing regulations provide that a plan:

> may not impose a nonquantitative treatment limitation with respect to mental health . . . benefits in any classification unless, . . . any processes, strategies, evidentiary standards, or other factors used in applying the nonquantitative treatment limitation to mental health ... benefits in the classification are comparable to, and are applied no more stringently than, the processes, strategies, evidentiary standards, or other factors used in applying the limitation with respect to medical surgical/benefits in the classification.

29 C.F.R. § 2590.712(c)(4)(i). Unfortunately, there is no clear law on how to state a claim for a Parity Act violation. Thus, district courts have continued to apply their own pleading standards. *See Michael D.*, 369 F. Supp. 3d at 1174–76 (collecting cases).

In *Michael D. v. Anthem*, this court considered the various pleading standards adopted by various other courts and found that the prevailing test requires Plaintiffs to show:

> (1) the relevant group health plan is subject to the Parity Act; (2) the plan provides both medical/surgical benefits and mental health or substance use disorder benefits; (3) the plan includes a treatment limitation for mental health or substance use disorder benefits that is more restrictive than medical/surgical benefits; and (4) the mental health or substance use disorder benefit being limited is in the same classification as the medical/surgical benefit to which it is being compared.

369 F. Supp. 3d at 1174 (citing *A.H. by & through G.H. v. Microsoft Corp. Welfare Plan*, No. C17-1889-JCC, 2018 WL 2684387, at *6 (W.D. Wash. June 5, 2018)); *see also David S.*, 2019 WL 4393341, at *3 (applying the same test). The court found several major flaws with the prevailing standard, especially as applied to exclusions for wilderness treatment programs. *See* 369 F. Supp. 3d at 1175. Of specific concern was whether pleading standards that required a successful claimant to allege a facially discriminatory exclusion, *see e.g. A.H.*, 2018 WL 2684387, at *6, or a clear, covered surgical analog to the excluded mental health treatment, *see e.g. Joseph F.*, 158 F. Supp. 3d at 1262, would be too restrictive, thus allowing insurance plans to "impose[] a limit on mental health treatment that does not apply to medical or surgical treatment," in violation of the Parity Act. *Michael D.*, 369 F. Supp. 3d at 1174–75. The court also addressed the dangers of pleading standards that are perhaps too broad and would expand the Parity Act beyond its intended scope. *See id.* at 1175 (discussing *Gallagher v. Empire HealthChoice Assurance, Inc.*, 339 F. Supp. 3d 248, 258 (S.D.N.Y. 2018)).

Additionally, this court discussed *A.Z. v. Regence Blueshield*, 333 F. Supp. 3d 1069, 1080–82 (W.D. Wash. 2018), which offered alternatives for pleading Parity Act claims. In *A.Z.*, the court held that Plaintiffs can assert a Parity Act violation by alleging that the Plan administrators have excluded covered treatment for discriminatory reasons or by asserting that "the plan 'categorically'

denies coverage in a way that violates the act." *Michael D.*, 369 F. Supp. 3d at 1175 (citing *A.Z.*, 333 F. Supp. 3d at 1081–82). The latter claim "can target the language of the plan or the processes of the plan," both of which are protected by the Parity Act implementing guidelines. *Id.*; *see also* 29 C.F.R. § 2590.712(c)(4)(i) (stating that "processes, strategies, evidentiary standards, or other factors" may not be applied in a discriminatory manner). For example, the plaintiffs in *A.Z.* successfully challenged a wilderness program exclusion, which the court found to be facially neutral, by alleging that the categorical denial of "medically necessary services at outdoor/wilderness behavioral healthcare programs" constituted an improper "'process'. . . that qualifies as a discriminatory limitation." 333 F. Supp. 3d at 1082 (citing *Bushell v. UnitedHealth Grp. Inc.*, No. 17-cv-2021-JPO, 2018 WL 1578167, at *6 (S.D.N.Y. March 27, 2018) and *Vorpahl v. Harvard Pilgrim Health Ins. Co.*, No. 17-CV-10844-DJC, 2018 WL 3518511, at *3 (D. Mass. July 20, 2018)).

Defendants urge the court to adopt the pleading standard articulated in *Welp v. Cigna Health & Life Ins. Co.*, No. 17-80237-CIV, 2017 WL 3263138 (S.D. Fla. July 20, 2017). In *Welp*, the court held that "[t]o properly plead a Parity Act violation resulting from the denial of the wilderness program's coverage, the first thing Plaintiff must do is correctly identify the relevant limitation" in the terms of the insurance plan, "and then allege a flaw in this limitation based on a comparison to a relevant analogue." 2017 WL 3263138, at *5. The *Welp* court dismissed plaintiffs' Parity Act claim because plaintiffs "consider[ed] wilderness programs in isolation," and failed to identify on the face of the insurance plan any disparate treatment limitations compared to a clear analogue medical/surgical care provider. *Id.* at *6. Defendants argue that the court should follow this strict pleading standard under which it alleges that Plaintiffs have failed to state a Parity Act claim. ECF No. 13 at 13, 18.

But *Welp* is not binding on this court, and the court finds *Welp* unpersuasive for two reasons. First, to state a plausible Parity Act claim, "a plaintiff need only plead as much of her prima facie case as possible based on the information in her possession," *Timothy D. v. Aetna Health & Life Ins. Co.*, No. 2:18CV753DAK, 2019 WL 2493449, at *3 (D. Utah June 14, 2019) (citations omitted), and "[t]he nature of Parity Act claims is that they generally require further discovery to evaluate whether there is a disparity between the availability of treatments for mental health and substance abuse disorders and treatment for medical/surgical conditions," *id.* at *4; *see also Melissa P. v. Aetna Life Ins. Co.*, No. 218CV00216RJSEJF, 2018 WL 6788521, at *4 (D. Utah Dec. 26, 2018) (observing that "[d]iscovery will allow [plaintiff] to learn and compare the processes, strategies, evidentiary standards, and other factors [the Plan administrator] used for sub-acute care in both" mental and medical healthcare coverage contexts). Courts in this jurisdiction favor permitting Parity Act claims to proceed to discovery to obtain evidence regarding a properly pleaded coverage disparity. Second, even if plaintiffs do not plead a plausible *facial* Parity Act challenge to an insurance plan on its own terms, they may instead allege that the plan *as applied* by the insurance administrator violates the Parity Act. *See Michael D.*, 369 F. Supp. 3d at 1176; *David S.*, 2019 WL 4393341, at *4 (permitting as-applied challenge); *Anne M.*, 2019 WL 1989644, at *2; *Melissa P.*, 2018 WL 6788521, at *3 (same). Because the strict pleading standard adopted in *Welp* is inconsistent with these two principles, the court declines to impose it.

In summary, various courts have applied differing pleading requirements for Parity Act claims. Absent any binding Tenth Circuit precedent on the issue, the court rules that Plaintiffs may successfully plead a Parity Act claim under any of the various standards discussed above. *See Bushell*, 2018 WL 1578167, at *6 (noting that "the nature of [] Parity Act claims counsels against a rigid pleading standard[.]"). For example, Plaintiffs may allege that the Plan contains an

exclusion that is discriminatory on its face; the Plan contains an exclusion that is discriminatorily applied between mental health treatment and its clear medical/surgical analog; and/or that the Plan's exclusion is the result of an improper process that violates the Parity Act. As discussed below, however, the Court finds that Plaintiffs sufficiently pled their Parity Act claim under the prevailing pleading standard and need not apply the available alternatives.

### 2. Plaintiffs' Parity Act Claims

This court must decide if Plaintiffs' complaint successfully alleges that Defendants violated the Parity Act by denying coverage for G.W.'s treatment at BlueFire and Catalyst. As discussed above, the prevailing standard requires Plaintiffs to plead: (1) their insurance plan is subject to the Parity Act; (2) the plan provides benefits for both mental health/substance abuse and medical/surgical treatments; (3) there are differing treatment limitations on benefits for mental health care as compared to medical/surgical care; and (4) such limitations on mental health care are more restrictive. *See Michael D.*, 369 F. Supp. 3d at 1174. Because this is a Motion to Dismiss, the court assumes all allegations are true and all factual inferences are interpreted in Plaintiffs' favor.

First, Defendants do not dispute that Plaintiffs' insurance plan is subject to the Parity Act. ECF No. 13 at 13. Second, Defendants also do not dispute that the Plan provides both mental and medical health benefits. *Id.* at 14. But as to the third and fourth elements, Defendants assert that Plaintiffs' complaint fails to state a violation of the Parity Act. Concerning G.W.'s care at Catalyst, Defendants argue that 1) Plaintiffs have not identified a treatment limitation on the face of the Plan that imposes more restrictive criteria on mental health benefits than for medical/surgical benefits and 2) Plaintiffs have failed to identify the analogous medical/surgical care. *Id.* at 13–15. And for BlueFire, Defendants contend that "wilderness therapy" is an "unproven service" under the Plan, the Plan "explicitly excludes 'unproven services' without regard to whether the service is

medical/surgical or mental health/substance abuse," and, accordingly, "[t]here is no lack of parity" for UBH's denial of benefits. *Id.* at 14. The court disagrees with Defendants as to both elements. Although Plaintiffs largely do not differentiate between the denial of treatment at Catalyst and BlueFire, the court addresses each in turn.

### a. Catalyst

UBH denied continued coverage for G.W.'s care at Catalyst, a residential treatment center, because it determined that his condition had improved and he no longer needed residential inpatient care. Plaintiffs have successfully pleaded that this denial may violate the Parity Act. First, Plaintiffs' Complaint alleges that UBH used "acute care medical necessity criteria" as the standard by which it evaluated G.W.'s need for continued treatment at Catalyst. Compl. at ¶ 38. Plaintiffs demonstrate that UBH's basis for denying coverage was that G.W. had not shown "recent dangerous behaviors [sic]" and that he "was not suicidal, homicidal or psychotic." *Id.* at ¶¶ 16, 22.[12] And Plaintiffs identify the medical analogues for inpatient, intermediate care that the Plan purportedly treats differently: "skilled nursing facilities, inpatient hospice care, and rehabilitation facilities." *Id.* at ¶ 37.[13] Second, Plaintiffs allege the acute-level medical necessity criteria UBH

---

[12] In deciding a motion to dismiss for failure to state a claim, the court may consider documents that are referred to in the complaint if the authenticity of the documents is not in question and the "documents are central to the plaintiff's claim." *BV Jordanelle, L.L.C. v. Old Republic Nat'l Title Ins. Co.*, 830 F.3d 1195, 1201 n.3 (10th Cir. 2016). For these reasons, the court considers the UBH benefits denial correspondences excerpted by Plaintiffs in deciding the pending motion.

[13] Defendants' arguments against the types of treatment facilities Plaintiffs use for comparison is unpersuasive. For example, Defendants argue that "it is hard to envision what factual support Plaintiffs could provide for their conclusory, threadbare allegation that end-of-life inpatient hospice care is 'analogous' to treatment focused on addressing mental health and substance abuse issues in adolescent." ECF No. 13 at 16–17. But that is not what Plaintiffs argue, nor is it the proper point of comparison for a Parity Act claim. After all, the notion that any necessary inpatient mental health treatment could take place at a skilled nursing facility or in hospice care "lacks support in common sense. Some medically necessary treatments for severe mental illness have no analogue in treatments for physical illnesses." *Harlick v. Blue Shield of Cal.*, 686 F.3d 699, 716 (9th Cir. 2012). But as Plaintiffs point out, the proper Parity Act analysis is not whether the "exact type of care" G.W. received at Catalyst was the same he could have received at a medical/surgical facility; rather, it is whether UBH uses less restrictive criteria for coverage for the analogous "level of care" in a medical/surgical treatment facility than it did for mental health/substance abuse

used for evaluating coverage for G.W.'s care at Catalyst's sub-acute mental health residential treatment center is a different "treatment limitation" than what UBH uses for coverage decisions regarding sub-acute medical/surgical care in the analogue facilities. They contend that the acute-level criteria UBH used is "inconsistent with, and more stringently applied, than the processes, strategies, standards or other factors used to limit coverage for medical/surgical treatment in the same classification." *Id.* at ¶ 39. In other words, Plaintiffs plausibly allege that Defendants' standards for evaluating medical necessity are stricter for continued care at Residential Treatment Centers than for continued care at medical/surgical inpatient facilities offering analogous levels of treatment, including skilled nursing facilities, inpatient rehabilitation facilities, or inpatient hospice care. Therefore, Plaintiffs have plausibly alleged a disparity between coverage criteria for mental health treatment at Catalyst and comparable medical/surgical treatments that, if true, may violate the Parity Act. Defendants' Motion to Dismiss on this ground is therefore denied.

### b. BlueFire

UBH denied Plaintiffs' benefits for all of G.W.'s care at BlueFire, an outdoor behavioral therapy program. The Plan states that UBH will deny benefits for care or procedures that are "considered to be experimental, investigational, or unproven in the treatment of [a] particular condition," ECF 14–1 at 166, and the UBH claims administrator denied coverage at BlueFire on this basis. Compl. at ¶ 6.[14] First, Plaintiffs identify the treatment limitation by alleging that

---

treatment. *See* ECF No. 30 at 17. This conclusion is supported by the Parity Act regulations and persuasive cases interpreting the regulations. *See* Preamble, Final Rules, 78 Fed. Reg. at 68247; *B.D. v. Blue Cross Blue Shield of Georgia*, No. 1:16-CV-00099-DN, 2018 WL 671213, at *10 (D. Utah Jan. 31, 2018) (observing that "residential treatment centers are the mental health counterpart to skilled nursing facilities."); *V. v. Health Care Serv. Corp.*, No. 15 C 09174, 2016 WL 4765709, at *6 n.11 (N.D. Ill. Sept. 13, 2016) (same).

[14] The court observes that the Plan does appear to impose a categorical exclusion of "[w]ilderness or other similar programs" under its benefits explanation for "[m]ental health and substance abuse residential treatment for children and adolescents." *See* ECF No. 14–1 at 138. However, it does not appear from the UBH claims denial correspondences excerpted in Plaintiffs' complaint that UBH denied coverage for G.W.'s care at BlueFire on this basis. Nor have

UBH essentially has a categorical policy against covering outdoor behavioral health programs for mental health/substance abuse treatment and unequally conditions the benefits denials of outdoor behavioral health programs "based on geographic location, facility type, [or] provider specialty." Compl. at ¶ 37. Plaintiffs also identify that "[c]omparable benefits offered by the Plan for medical/surgical treatment analogous to the benefits the Plan excluded for G.'s treatment include sub-acute inpatient treatment settings such as skilled nursing facilities, inpatient hospice care, and rehabilitation facilities." *Id.* Second, Plaintiffs argue that for this analogous medical/surgical level of sub-acute treatment, UBH does not "exclude coverage for medically necessary care . . . based on geographic location, facility type, provider specialty, or other criteria in the manner UBH excluded coverage of treatment for G.W. at Blue Fire." *Id.*

Defendants respond that it denies coverage for "wilderness programs" as treatment for any type of malady—whether surgical/medical or mental health/substance abuse—and, as a result, there is no disparity. Although facial neutrality is relevant, the disparity analysis required by the Parity Act counsels against such a simplistic view. After all, "in practice, wilderness camp exclusions have only been applied to outdoor behavioral and mental health treatment programs, and thus the effect of the limitation is that it imposes a limit on mental health treatment that does not apply to medical or surgical treatment." *Michael D.*, 369 F. Supp. 3d at 1175. And the Parity Act broadly prohibits discriminatory "processes, strategies, evidentiary standards, or other factors" just as much as it proscribes facial disparities in coverage. 29 C.F.R. § 2590.712(c)(4)(i). Therefore, the relevant comparison is "not whether benefits for wilderness therapy were available for medical patients, but whether the plan provided benefits for skilled nursing facilities and

---

Plaintiffs raised this issue in their complaint. Therefore, for purposes of this motion, the court does not address UBH's apparent categorical exclusion of coverage for the type of outdoor behavioral therapy G.W. received at BlueFire.

rehabilitation centers for medical patients while denying benefits for residential treatment centers offering wilderness therapy for mental health patients." *Gallagher*, 339 F. Supp. 3d at 258. Plaintiffs have plausibly pleaded that, for outdoor behavior treatment programs, which in practice are only available to those seeking mental health/substance abuse care, Defendants' policy of excluding outdoor behavior therapy from coverage is because of more restrictive criteria that is not applied to analogous medical/surgical care. Therefore, the court denies Defendants' Motion to Dismiss Plaintiffs' Parity Act claim as it relates to G.W.'s treatment at BlueFire.[15]

## IV. ORDER

For the foregoing reasons, Defendants' Motion to Dismiss is GRANTED IN PART. Plaintiff Kim. W. is dismissed from the case for lack of standing. In all other respects, Defendants' motion is DENIED.


Signed September 27, 2019

<div style="margin-left:40%">

BY THE COURT:

Jill N. Parrish

United States District Court Judge

</div>

---

[15] The court notes that while UBH "is fully within its right to exclude experimental or unsuccessful types of treatments," the Parity Act prohibits it from "excluding mental health treatment merely because it occurs outdoors" in a way that "appears to place a limitation on mental health that does not apply to medical or surgical treatments." *Michael D.*, 369 F. Supp. 3d at 1176. To avoid a Parity Act violation going forward, "UBH needs to provide a detailed explanation of why wilderness camps are not covered, especially when Plaintiffs have alleged violations of the Parity Act" during their claims appeals processes. *Id.*