IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| MICHAEL W. and G.W.,<br><br>                    Plaintiffs,<br><br>v.<br><br>UNITED BEHAVIORAL HEALTH AND THE WELLS FARGO & COMPANY HEALTH PLAN,<br><br>                    Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFFS' MOTION FOR LEAVE TO CONDUCT DISCOVERY (DOC. NO. 50)**<br><br>Case No. 2:18-cv-00818 JNP-DAO<br><br>District Judge Jill N. Parrish<br><br>Magistrate Judge Daphne A. Oberg |

Before the court is Plaintiffs Michael W. and G.W.'s (collectively the "W. Plaintiffs") Motion for Leave to Conduct Discovery (Doc. No. 50).[1]  In this case, the W. Plaintiffs allege two causes of action against Defendants United Behavioral Health ("UBH") and Wells Fargo & Company Health Plan ("Plan") arising out of their failure to pay for treatment G.W. received at two facilities—BlueFire Wilderness Therapy ("BlueFire") and Catalyst residential treatment center ("Catalyst"). The first claim is for recovery of plan benefits under 29 U.S.C. § 1132(a)(1)(B) of the Employee Retirement Income Security Act of 1974, 29 U.S.C. §1001 *et. seq.*, ("ERISA"), and the second claim alleges a violation of the Mental Health Parity and Addiction Equity Act of 2008, codified at 29 U.S.C. § 1185a(a)(3)(A)(ii) and enforced through 29 U.S.C. § 1132(a)(3) ("Parity Act").  (Compl. 10–13, Doc. No. 2.)

The W. Plaintiffs seek leave to conduct discovery on their Parity Act claim.  While acknowledging that discovery is limited for ERISA claims, the W. Plaintiffs argue that their

---

[1] The district judge dismissed Plaintiff Kim W. from this case.  (Mem. Dec. and Order Granting in Part and Denying in Part Defs.' Mot. to Dismiss 9–10, 41, Doc. No. 41.)

Parity Act claim is distinct and that discovery as to that claim is permissible, relevant, and necessary.  (Mot. for Leave to Conduct Discovery 1, 7, Doc. No. 50.)  UBH and the Plan oppose the motion, arguing that "the heart" of the W. Plaintiffs' claims is one for recovery of benefits under ERISA, and as such, discovery should be limited to the production of the administrative record.  (Opp'n to Mot. for Leave to Conduct Discovery 1–2, Doc. No. 53).  They also argue that if the court permits discovery, it should limit the scope of that discovery.  (*Id.* at 2.)  On June 2, 2020, the court heard oral argument on the motion.  (Doc. No. 61.)

Having reviewed the parties' briefing and considered the parties' arguments at the June 2 hearing, the court grants the W. Plaintiffs' motion for the reasons set forth below.  The court will permit the W. Plaintiffs to conduct discovery on the Parity Act claim, subject to the limitations agreed to by parties during the June 2, 2020 hearing.

## <u>BACKGROUND</u>

Plaintiff Michael W. is a participant in the Plan and his son, G.W., is a beneficiary of the Plan.  The Plan is a self-funded employee welfare benefits plan under ERISA.  (Compl. 2, Doc. No. 2.)  G.W. received treatment for substance abuse and mental health conditions at BlueFire and Catalyst in 2016 and 2017.  (*Id.* at 3, 4 & 6.)  Both facilities provide sub-acute treatment to adolescents with behavioral, mental health, and substance abuse problems.  (*Id.* at 2.)

Defendant UBH was the third-party claims administrator for the Plan during G.W.'s treatment.  (*Id.* at 1.)  UBH denied coverage of G.W.'s treatment at BlueFire, claiming wilderness therapy was not a proven treatment.  (*Id.* at 4.)  UBH also denied the W. Plaintiffs' appeal of the coverage decision.  (*Id.* at 6.)  UBH paid benefits for G.W.'s treatment at Catalyst from September 16, 2016 to October 11, 2016.  (*Id.* at 6.)  However, UBH denied coverage for the remainder of G.W.'s treatment at Catalyst, which continued until February 28, 2017,

claiming that G.W. could have been treated with a lower level of care.  (*Id.* at 6–7.)  Again, the W. Plaintiffs appealed the denial of coverage of G.W.'s treatment at Catalyst.  (*Id.* at 7.)  The denial was affirmed at each subsequent level of review.  (*Id.* at 8–10.)

The W. Plaintiffs filed suit against the defendants, asserting a claim for recovery of benefits under ERISA.  In addition, the W. Plaintiffs filed a second claim for violations of the Parity Act, alleging that UBH and the Plan provided less coverage for G.W.'s residential mental health and substance abuse treatment than they would have provided for analogous residential treatment to medical or surgical patients.  (*Id.* at 11–12.)

Defendants moved to dismiss the W. Plaintiffs' Complaint.  (Defs.' Mot. to Dismiss Pls.' Compl. with Prejudice, Doc. No. 13.)  The district judge dismissed Plaintiff Kim W. from the case for lack of standing but denied the defendants' motion in all other respects.  (Mem. Dec. and Order Granting in Part and Denying in Part Defs.' Mot. to Dismiss 41, Doc. No. 41.)  As relates to the instant motion, the district judge declined to adopt a strict pleading standard for the Parity Act claim for two reasons.  First, the district judge summarized cases finding that "[c]ourts in this jurisdiction favor permitting Parity Act claims to proceed to discovery to obtain evidence regarding a properly pleaded coverage disparity."  (*Id.* at 36.)  Second, citing cases, the district judge found that even if the W. Plaintiffs cannot show a violation of the Parity Act through the plan documents themselves, they may show that "the plan *as applied* by the insurance administrator violates the Parity Act."  (*Id.* (emphasis in original)).

In the instant motion, the W. Plaintiffs move the court for permission to conduct discovery on their Parity Act claim.  (Mot. for Leave to Conduct Discovery, Doc. No. 50.)

**DISCUSSION**

In their motion, the W. Plaintiffs argue they should be permitted to conduct discovery on their Parity Act claim for three reasons: first, because the Parity Act claim is separate from the ERISA claim; second, because discovery is permitted for Parity Act claims and is necessary to prove a Parity Act violation as applied; and, third, because the requested discovery satisfies the requirements of Rule 26(b)(1) of the Federal Rules of Civil Procedure. (*Id.* at 1–8.)

In opposition, UBH and the Plan make two main arguments. First, they argue the plaintiffs' Parity Act claim is just a repackaged ERISA claim for benefits under § 1132(a)(1)(B); and, as such, discovery should be limited to the administrative record. (Opp'n to Mot. for Leave to Conduct Discovery 3–6, Doc. No. 53.) Second, the defendants argue that even if some extra-record discovery is ordered by the court, the plaintiffs' discovery requests are overly broad and not proportional to the needs of their case. (*Id.* at 6–10.)

The court finds in favor of the W. Plaintiffs for the three reasons sets forth in their motion, as discussed further below.

### A. The W. Plaintiffs' Parity Act Claim is Distinct from Its ERISA Claim.

First, the court finds the W. Plaintiffs' Parity Act claim to be legally and factually distinct from its ERISA claim. The W. Plaintiffs' allegations that UBH and the Plan violated the Parity Act are enforceable through a cause of action under a distinct provision of ERISA—29 U.S.C. § 1132(a)(3). This cause of action alleges a statutory violation of ERISA itself and does not arise from an alleged violation of rights under an ERISA plan. *See Joseph & Gail F. v. Sinclair Servs. Co.*, 158 F. Supp. 3d 1239, 1259 n.118 (D. Utah 2016) (finding that the Parity Act is an "amendment to ERISA, making it enforceable through a cause of action under § 1132(a)(1)(B) as a violation" of ERISA's statutory provisions). "Section 502(a)(3) actions are to enforce rights

not arising under ERISA plans, but rather arising from ERISA itself.  Therefore, a finding that claims arise from ERISA § 502(a)(3) reverts discovery into the traditional realm and is governed under traditional federal, circuit, and local procedure."  *Jensen v. Solvay Chems., Inc.*, 520 F. Supp. 2d 1349, 1355-56 (D. Wyo. 2008).

The W. Plaintiffs' claims are factually distinct as well.  In their first cause of action, the W. Plaintiffs allege that UBH and the Plan erroneously applied the plan terms and should pay for G.W.'s contested treatment at BlueFire and Catalyst.  (Compl. 11, Doc. No. 2.)  In their second cause of action for violation of the Parity Act, the W. Plaintiffs allege that the "medical necessity criteria utilized by the Plan and UBH, as written or in operation, use processes, strategies, standards, or other factors to limit coverage for mental health or substance use disorder treatment in a way that is inconsistent with, and more stringently applied, than the processes, strategies, standards or other factors used to limit coverage for medical/surgical treatment in the same classification."  (*Id.* at 12 (citing 29 C.F.R. § 2590.712(c)(4)(i)).  The W. Plaintiffs seek equitable relief as a remedy unique to their Parity Act claim.  (*Id.* at 13.)  Rule 8 of the Federal Rules of Civil Procedure allows for this type of alternative pleading.  Fed. R. Civ. P. 8(c).

Courts in this district analyzing the Parity Act have found that the discovery limitations applicable to ERISA claims brought under § 1132(a)(1)(B) do not apply to distinct claims brought under the Parity Act.  *See Randall R. v. Regence Blue Cross Blue Shield of Utah*, No. 2:18-CV-00381, 2020 U.S. Dist. LEXIS 4587, at *3–5 (D. Utah Jan. 9, 2020) (unpublished) (granting the plaintiffs' discovery seeking the same information and documents that plaintiffs seek in this case); *Timothy D. v. Aetna Health & Life Ins. Co.*, No. 2:18-CV-753, 2019 U.S. Dist. LEXIS 100388, at *12 (D. Utah June 14, 2019) (unpublished) ("The nature of Parity Act claims is that they generally require further discovery to evaluate whether there is a disparity between

the availability of treatments for mental health and substance abuse disorders and treatment for medical/surgical conditions."); *Melissa P. v. Aetna Life Ins. Co.*, No. 2:18-CV-00216, 2018 U.S. Dist. LEXIS 216775, at *10 (D. Utah Dec. 26, 2018) (unpublished) (indicating that "[d]iscovery will allow [plaintiff] to learn and compare the processes, strategies, evidentiary standards, and other factors Aetna used for sub-acute care in both realms").  The court finds the reasoning of these cases persuasive and applicable here.

The legal and factual distinctions between the W. Plaintiffs' two causes of action undercut the defendants' argument that the Parity Act claim is just a repackaged ERISA claim for benefits.  Whether the W. Plaintiffs will ultimately prevail on both claims is not relevant to deciding whether discovery is allowable on the Parity Act claim.

### B.  Discovery is Permissible and Necessary Under the Parity Act.

Discovery is necessary when the plaintiffs allege that the defendants violated the Parity Act on both the face of the plan and as applied, as is the case here. (Compl. 12, Doc. No. 2.) Limiting discovery to the prelitigation appeal record would be inconsistent with both the purpose of the Parity Act and its implementing regulations.

The Parity Act "'prevents insurance providers from writing or *enforcing* group health plans in a way that treats mental and medical health claims differently.'"  *Christine S. v. Blue Cross Blue Shield of N.M.*, 428 F. Supp. 3d 1209, 1219 (D. Utah 2019) (emphasis added) (quoting *David S. v. United Healthcare Ins. Co.*, No. 2:18-CV-803, 2019 U.S. Dist. LEXIS 157046, at *3 (D. Utah Sept. 13, 2019) (unpublished)).  Violations of the Parity Act can arise from the plan documents "as written and in operation."  29 C.F.R. § 2590.712(c)(4)(i).

The Parity Act's implementing regulations prohibit quantitative and nonquantitative limits on mental health and substance abuse disorder benefits that are more restrictive than those

in place for medical/surgical benefits.  29 C.F.R. § 2590.712(c).  Examples of nonquantitative

limits identified in the Parity Act's implementing regulations include "restrictions based on

geographic location, facility type, provider specialty, and other criteria that limit the scope and

duration of benefits for services provided under the plan or coverage."  *Id.* §

2590.712(c)(4)(ii)(H).  Notably, the Parity Act regulations provide that a plan administrator's

required disclosures may include documents allowing for a meaningful analysis of the

"processes, strategies, evidentiary standards, and other factors used to apply a nonquantitative

treatment limitation with respect to medical/surgical benefits and mental health or substance use

disorder benefits under the plan." *See* 29 C.F.R. § 2590.712(d)(3).

 Limiting discovery to the plan documents and prelitigation appeal record, as UBH and

the Plan propose, will improperly hamstring the W. Plaintiffs' ability to prove a violation of the

Parity Act as applied.  *See Christine S.*, 428 F. Supp. 3d at 1219 ("[P]laintiffs often must plead

'as-applied' challenges to enforce their Parity Act rights when a disparity in benefits criteria does

not exist on the face of the plan.").  By their nature, documents and information about the

"processes, strategies . . . and other factors used to apply" nonquantitative limits could

reasonably be expected to exist outside of the plan documents, as the W. Plaintiffs assert and

seek.  (Discovery Requests, Ex. 1 to Mot. for Leave to Conduct Discovery, Doc. No. 50-1.)

G.W.'s prelitigation appeal record is not likely to include analog medical or surgical treatment

documents necessary to litigate a Parity Act claim because he was only treated for mental health

and substance abuse disorders.

 Having concluded that the W. Plaintiffs' Parity Act claim is independent of its ERISA

claim and that discovery is necessary to evaluate whether the Plan treats mental health and

substance abuse claims differently than medical/surgical claims, the court turns to whether the

discovery the W. Plaintiffs seek to propound is consistent with the requirements of Rule 26(b)(1) of the Federal Rules of Civil Procedure.

### C.  The Discovery the W. Plaintiffs Seek to Propound Is Consistent with the Requirements of Rule 26(b)(1).

Finally, the court finds the discovery the W. Plaintiffs seek to propound to be both relevant and proportional, particularly given the limitations the W. Plaintiffs agreed to at the June 2, 2020 hearing.[2]

The W. Plaintiffs' proposed discovery is limited in number to seven interrogatories, seven requests for production, and seven requests for admission. (Discovery Requests, Ex. 1 to Mot. for Leave to Conduct Discovery, Doc. No. 50-1.)  The proposed discovery is limited in topic to the nonquantitative limits UBH and the Plan use for medical/surgical benefits as compared to the nonquantitative limits they use in evaluating the medical necessity of residential treatment for mental health and substance use disorders.  Some of the proposed requests even mirror the exact language of the Parity Act's implementing regulations.  *Compare id.* at 5 (requesting "processes, strategies, standards, or other factors utilized by you from June 1, 2016 to the present to limit coverage for claims arising in residential treatment facilities," *with* 29 C.F.R. § 2590.712(d)(3) (stating that disclosure requirements include "documents with information" regarding "the processes, strategies, evidentiary standards, and other factors used to apply nonquantitative treatment limitation[s] with respect to medical/surgical benefits and mental health or substance use disorder benefits under the plan").

---

[2] The court's decision to allow the plaintiffs to conduct discovery on their Parity Act claim should not be construed as restricting UBH and the Plan's ability to interpose appropriate objections to those requests.

UBH and the Plan argue that the W. Plaintiffs' discovery requests go beyond the parameters of the district judge's decision denying the defendants' motion to dismiss. (Opp'n to Mot. for Leave to Conduct Discovery 6, Doc. No. 53.)  Based on the district judge's legal analysis in that decision, UBH and the Plan argue that discovery should be limited to "coverage criteria . . . governing mental health and analogous medical/surgical claims for residential treatment centers; and (2) whether the Plan provided benefits for skilled nursing facilities and rehabilitation centers that it denied to patients seeking wilderness therapy for mental health treatment."  (*Id.* at 7.)  The court rejects this argument.  The type of discovery allowed turns on the causes of action pleaded, not on the court's legal analysis leading to a decision denying the defendant's motion to dismiss.  *See* Fed. R. Civ. P. 26(b)(1) (providing that the scope of discovery extends to "nonprivileged matter that is relevant to any party's *claim* or defense" (emphasis added)).

During the June 2, 2020 hearing, the court addressed additional objections to the scope of discovery raised by UBH and the Plan.  At the hearing, the W. Plaintiffs agreed to limit their discovery requests to the years G.W. was in treatment: 2016 and 2017.  The W. Plaintiffs also agreed to limit the scope of their requests to plans covering the W. Plaintiffs—a limitation consistent with the regulations implementing the Parity Act.  *See* 29 CFR § 2590.712(a) ("Medical/surgical benefits means benefits with respect to items or services for medical conditions or surgical procedures, *as defined under the terms of the plan or health insurance coverage* and in accordance with applicable Federal and State law . . . ." (emphasis added)).  The court finds the limitations on discovery agreed to by the parties during the June 2, 2020 hearing to be appropriate.  The court reminds the parties to meet and confer on any additional discovery disputes before filing discovery motions as this case moves forward.

**CONCLUSION**

Based on the foregoing, the Court GRANTS Plaintiffs' Motion to Conduct Discovery

pursuant to the limitations discussed above.

DATED this 19th day of June, 2020.

BY THE COURT:

_____
Daphne A. Oberg
United States Magistrate Judge